## COMMONWEALTH *vs.* HENRY W. BURGETT.

Norfolk. Jan. 25. — Feb. 29, 1884. DEVENS & C. ALLEN, JJ., absent.

A., having a place of business in B., where he sold liquors, issued a circular to persons in H. offering to sell them liquors at prices in B., free of expressage, and stating that applications might be made to a certain post-office box in H. This box was hired by an employee of A. An order for a bottle of whiskey was addressed to this box, and was taken by the employee to A., who selected and set apart a bottle of whiskey, and delivered it to an expressman in B., who carried it to H. and delivered it to the person ordering it. *Held*, that, on these facts, A. might be found guilty of a sale at H.

COMPLAINT alleging an illegal sale of intoxicating liquors by the defendant to one Francis H. Caffin, at Hyde Park, on July 23, 1883. Trial in the Superior Court, before *Barker*, J., who allowed a bill of exceptions, in substance as follows:

It appeared in evidence that the defendant was, at the time of the alleged illegal sale, the manager of the Cushing Process Company, a corporation organized for the purpose of purifying intoxicating liquors and selling the same, and having its place of business in Boston; that, at some time prior to the alleged sale, the Cushing Process Company procured to be distributed in Hyde Park the following circular:

"Important Notice to Families of Hyde Park. Your selectmen having refused druggists the right to dispense pure liquors, even in cases of emergency when prescribed by a physician, and the same druggists having returned goods bought of us in anticipation of having the right given them to sell, now, therefore, the

Cushing Process Co., desiring that all families shall have the benefit to be derived from the use of their pure stimulants, offer their goods to the residents of Hyde Park, one bottle or more, at Boston prices, free of expressage, until such time as the druggists are given the right to supply you, and not longer. Your order should be accompanied with the cash, and address plainly given.                           The Cushing Process Co.,

214 High and 157 Broad Streets, Boston.

" Or if more convenient, Box 527, Hyde Park."

It was also in evidence, that one John W. Heaton was a salesman for the company, acting for them in Boston but not in Hyde Park, and lived in Hyde Park, where he had a box in the post-office, numbered 527. The government put in evidence that, before the day of the alleged sale, one Charles Jacobs, a police officer of Hyde Park, employed Caffin to assist him in prosecuting offences against the liquor law, and gave to Caffin an envelope addressed to the Cushing Process Company, post-office box 527, Hyde Park; that the envelope contained a dollar in cash, to be in full payment for the liquor, and Caffin was requested by Jacobs to place in the envelope the following order, and to deposit the envelope in the post-office in Hyde Park; which Caffin did:

" Hyde Park, July 21st, 1883.

" The Cushing Process Company, 214 High Street, Boston. Gents: I send one dollar for a bottle of whiskey. Send it to Francis H. Caffin, West Street, Hyde Park, Mass."

There was no evidence that Caffin had seen said circular before depositing the order in the post-office. The order was taken from the post-office by Heaton, who testified that he had no authority to accept it, and was simply the bearer of it to Boston; and that he gave the order to some one in the office of the company in Boston, and at the same time talked with the defendant, who said he should fill the order. Jacobs testified that he had a conversation with the defendant some days after the liquor was sent, and the defendant admitted receiving the order, and having it filled, and sending it by express to Hyde Park.

John McCanley testified, for the government, that he was an expressman from Boston to Hyde Park; that he was called to

get the package from said company; that he carried it to Hyde Park, and subsequently delivered it to Caffin.

The defendant testified in his own behalf that Heaton's duty was to report orders to the office, and, if found to be such as the defendant cared to fill, they were put through the regular course of business; that Heaton had no authority whatever to accept orders, and the power to accept or reject orders was exercised by the defendant solely; that when Caffin's order was brought to him, Heaton told him that it was from a police officer, and the appearances indicated that it was a decoy letter; that, before accepting the order, he took it and consulted counsel; that, after consulting counsel, he gave the order to his book-keeper, who put the money in the cash drawer, and the order was put upon the order-book; that the defendant then went into the storeroom, where there was a line of shelves and bottles for retail business, and took from a shelf a bottle of whiskey, which he directed to be sent to Caffin; that, at the time he took the bottle from the shelf, he intended it to become the property of Caffin; that it was delivered to an expressman, and at that time the defendant intended the possession to be delivered to Caffin; and that the defendant paid the express.

The defendant requested the judge to instruct the jury as follows: "1. By a contract for the sale of specific ascertained goods, the property immediately vests in the buyer, and a right to the price in the seller, unless it can be shown that such was not the intention of the parties. 2. If the order from Caffin was accepted in Boston, the goods ordered fully paid for at that time, and the goods set apart and identified in Boston in pursuance of said order, the sale was made in Boston, in the absence of any agreement to the contrary. 3. An agreement to send goods to the purchaser does not import a contract to make a transfer of the title and the sale at the place to which the goods are to be sent. 4. If the defendant agreed to deliver the possession of the goods at Hyde Park, it would not prevent the title passing elsewhere. 5. If there was no agreement between the parties as to when and where the title should pass, the intention of the defendant must control. 6. A delivery to a common carrier is a delivery of possession to the purchaser, in the absence of any agreement. 7. The seller's agreement to pay the

charges of transportation, in and of itself, does not change the relation of the carrier as agent for the purchaser. 8. If there was an agreement of the Cushing Process Company to sell liquors in Hyde Park, the contract was illegal and void, and the defendant is presumed not to have intended to execute such contract in the sale to Caffin. 9. If the jury find that Caffin's order was accepted in Boston, the goods there fully paid for, and set apart for him in Boston, they must acquit the defendant, unless it appears beyond a reasonable doubt that the parties intended the title to the goods to pass at Hyde Park. 10. There is no evidence to support the allegation of a sale to Caffin. 11. There is no evidence of a sale of intoxicating liquors in Hyde Park."

The judge declined to give all but the first request, but instructed the jury, after certain general directions, in substance as follows: " There is evidence tending to show that the Cushing Process Company, with the knowledge and approval of the defendant, had circulated in Hyde Park, before the time of this alleged sale, the notice which has been given in evidence; that, on July 21, Caffin deposited in the post-office at Hyde Park an order for a bottle of whiskey; that this order was taken by a salesman of the Cushing Process Company, who resided in Hyde Park, from the post-office in Hyde Park, and was delivered in the office of the company in Boston to the company there; that it was there brought to the attention of the defendant, and the defendant, upon that, on the same day, went to a certain shelf in the warerooms, and there selected and set apart a certain bottle of whiskey, intending that it should fill the order here put in evidence; that thereafter, by the employees of the company, that bottle was packed, marked, and delivered to an expressman, and finally delivered by him to Caffin; that the expressman was paid for that service by the company. And it is for you to find, from these facts, and any other facts in evidence, where the sale was made; and it is for me to aid you in that finding, by stating to you what are the principles of law applicable to sales, and showing at what time, and when and where, the property passed.

" It is clear that at least upon, or before, the final delivery by the expressman to Caffin of the box containing the whiskey, the

title passed to Caffin. If the title passed to him in Boston, the defendant is not guilty. But if it passed to him after it had reached Hyde Park, then the sale was made in Hyde Park, and if you are satisfied that it was made by the defendant, of course he would be guilty. Now, in the first place, the order does not call for any particular bottle of whiskey; but the language is, 'I send one dollar for a bottle of whiskey.' Therefore, when the defendant determined to sell to Caffin a bottle of whiskey, thus ordered, that determination was not sufficient to have the title pass; though, if a certain particular bottle of whiskey had been ordered, and the order was accepted by the company, or the defendant as its agent, the title would have passed, without anything further. But as this was not a sale of, or order for, any ascertained bottle of whiskey, but only for a bottle of whiskey, there was something more necessary for the title to pass than to have the defendant determine to sell a bottle of whiskey to Caffin upon this order. And the general principle of law is this: that upon an order for an unascertained article of merchandise, to be selected by the seller from his stock, the title does not pass until some action is taken by the seller, distinctly separating the article, and setting it aside for the purchaser; and that, in the absence of any agreement to the contrary, it does pass when the article is so set aside, even before it is actually delivered. Therefore, it is necessary for you to ascertain whether it was the intention of the defendant here to sell this liquor in Hyde Park, and to carry on the business of selling liquor there; or whether it was his intention to sell the liquor in Boston; and whether, in this identical case of a sale, he did intend that the property in the bottle of whiskey, which has been produced before you, should pass to Caffin in Boston, or whether it should not pass until the delivery of the box containing it in Hyde Park. And in ascertaining that fact, you are not to take into account simply his evidence on the stand as to what his intention was at that time, — though you are to take that into account too; but you are to take into account all the evidence in the case. You are to take into account this circular, and all the facts before you in evidence, and are to say, upon them, whether there was anything in this agreement to sell, in the transactions between these two parties, to countervail the other facts in the case; anything

in the transmission of the order, in the filling of the order from the stock in the warerooms, in the delivery of the goods, and the intention of the defendant in filling the order, to indicate at what time the property passed. It is a matter of the intention of the parties; it is a matter of the intention of this defendant peculiarly; and you are to decide whether he has made a sale in Boston, and so is not guilty, or whether he has made a sale in Hyde Park, and is guilty.

"There is another method by which title passes on a sale; but that is subject to the same qualification, again, that pertains to this setting of articles apart as articles belonging to the purchaser, and that is by their delivery to a common carrier. If the articles are ordered, and the order is accepted, and the seller delivers the articles to a common carrier, to be delivered to the purchaser, then the delivery to a common carrier is, under ordinary circumstances, a delivery to the purchaser; and if that delivery to the common carrier took place in Boston, there would be delivery in Boston to the purchaser. But that, again, is a matter which can be countervailed and controlled by the agreement of the parties. And if you find there was an agreement of the parties in this case by which the defendant was bound to deliver this liquor to Caffin at Hyde Park, before it should become the property of Caffin, then the delivery to the expressman would not avail to pass the title in the property; because the intention of the parties was that it should not so pass. It is a question for you to find what was the intention of the parties here, and of the defendant particularly, and to apply to the facts the rules which I have given you, to determine where the sale took place. If you find the sale took place in Hyde Park, you will find the defendant guilty. If you find the sale took place in Boston, you will find him not guilty."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*C. F. Perkins*, for the defendant.

*E. J. Sherman*, Attorney General, for the Commonwealth.

FIELD, J. There was evidence for the jury that the defendant intended that the whiskey should be at the risk of the company until delivered to the buyer at Hyde Park; and that it was the understanding of the defendant, that until, and unless, the

whiskey was so delivered, the order was not filled, and the company was not entitled to retain the money sent. This is evidence of a sale in Hyde Park. No error appears in the exceptions. *Commonwealth* v. *Greenfield*, 121 Mass. 40. *Suit* v. *Woodhall*, 113 Mass. 391. *Exceptions overruled.*