outlaw September 7, 1897. As this action was commenced September 29, 1898, it is manifest that it was begun too late under the law as enunciated in the Seattle and Pratt Case. The court is unable to distinguish this case from the case at bar, the facts, in legal effect, being identical.

It is unnecessary to consider the other defenses. The complaint is dismissed, with costs.

<hr>

## CARBERRY et al. v. UNITED STATES.

### (Circuit Court, S. D. New York. May 31, 1902.)

### No. 3,109.

1. CUSTOMS DUTIES—GOODS SUBJECT TO DUTY—SECOND-HAND BOTTLES—FREE LIST—JUNK.

Second-hand bottles, capable of being used as bottles, are not junk, within Tariff Act July 24, 1897, par. 588, allowing junk to be imported free of duty, but are assessable as bottles, under paragraph 99.

Appeal by J. B. Carberry & Co. from a decision of the board of United States general appraisers, which affirmed the decision of the collector of customs at the port of New York.

The following is the opinion of the board of general appraisers:

The protestants imported a number of bottles, which appear to have been once used, and which they claim are entitled to free entry as old junk, under the provisions of paragraph 588 of the act of 1897. The local appraiser returned them as "colored glass bottles under one pint," and duty was assessed thereon at the rate of 1½ cents per pound, under the provisions of paragraph 99 of said act. The protestants herein also claim said merchandise to be entitled to free entry under paragraph 483, or to a lower rate than was assessed under the provisions of paragraph 99 aforesaid; but upon notice given to submit evidence in support thereof, said importers, through their counsel, chose to waive all claims except that the merchandise is entitled to free entry as junk. In submitting this case, counsel for the importers claim that trade or commercial understanding of the merchandise is unnecessary, in view of the lexicographical definition of the word "junk," and submit an extract from the Century Dictionary in support of that contention. The extract is as follows: "Worn-out and discarded material in general that may be turned to some use; especially, old rope, chain, iron, copper, parts of machinery and bottles, gathered or bought up by tradesmen, called junk dealers; hence, rubbish of any kind; odds and ends."

John Carberry, one of the importers, testified that the word "junk" included old sails, old bags, woolen or cotton rags, scrap iron, old bottles, scrap metal, and all waste left over in factories. In this list of articles claimed to be junk is included many things specially provided for in the tariff, and, although it may be that they are looked upon by junkmen as junk, yet they cannot be claimed to be provided for under the paragraph for junk, for the reason that their designation elsewhere by name is more specific. If the importers' contention were well founded, many or nearly all old articles of merchandise, including parts of old machinery, old jute bagging or jute waste fit for other than paper stock, woolen rags, and second-hand bottles, would escape the duty specifically provided therefor by congress. The tariff does not discriminate between old and new bottles, and unless damaged to such an extent as to be unsuitable for use as bottles, they are still bottles, and are never considered or used as anything other than bottles. They certainly do not agree with the description set out in the definition furnished and cited above. They are not worn out or discarded material or rubbish, or odds and ends, but they are merchandise, purchased and usable

as bottles, and are not worn-out rubbish. It is indeed open to, very grave doubt as to whether the bottles would be junk even if broken up, in view of the fact that the act of 1894 contained a provision in the free list (paragraph 495) for broken glass, which provision is omitted from the act of 1897. This was undoubtedly in conformity with the policy of carefully protecting the glass manufacturing industry at all points, and is in line with the protective duty in paragraph 99 of the present act on bottles, "filled or unfilled, * * * and whether their contents be dutiable or free." This provision treats bottles separately from other coverings, and was manifestly intended to protect the domestic bottle industry from the competition of bottles imported filled, then emptied, and sold for refilling. The bottles in this case were in fact sold to a brewer, who used them in exactly the same manner as he did new bottles. The point that they were dirty and required cleaning is unimportant, for, as a matter of fact, all bottles, whether new or old, must, of necessity, undergo cleaning before filling with any article intended for human consumption.

The courts have held that old second-hand pieces of rail are not included in the term of "wrought scrap iron," but were assessable as rails because possible to use as such (Dwight v. Merritt, 140 U. S. 213, 11 Sup. Ct. 768, 35 L. Ed. 450); and this board, in the matter of old obsolete cannon, which were claimed to be free as composition metal, followed this ruling and G. A. 4659, and held that they were manufactured articles, and not metal, as so understood.

If, however, we assume that the articles before us are junk, they are a species of junk taken out of the provisions for such articles by the specific provision for bottles, for they are still bottles, and must follow that classification. This case is clearly distinguishable from Cadwalader v. Paper Co., 149 U. S. 350, 13 Sup. Ct. 875, 37 L. Ed. 764, cited by protestant's counsel in his brief. There the articles passed upon were old and worn-out rubber shoes, unfit to be worn, and fit only to be remanufactured. Those articles were no longer shoes, but were in fact worn-out rubbish, whereas the merchandise before us is bottles, which although once used are still bottles, and will continue to be bottles until destroyed, and just as rails or cannon still remain rails or cannon until destroyed and unfit for use as such articles.

We hold that old bottles capable of being used as bottles are not junk, and are properly assessable as bottles, and that the articles in question were correctly assessed for duty under paragraph 99 of the act of July 24, 1897.

The protest is overruled, and the decision of the collector affirmed.

Albert Comstock, for importers.
Charles D. Baker, Asst. U. S. Atty.

LACOMBE, Circuit Judge. The decision is affirmed on the opinion of the board of general appraisers.

---

LEATHER MFRS.' NAT. BANK v. TREAT, Collector of Internal Revenue.

(Circuit Court, S. D. New York. June 13, 1902.)

1. INTERNAL REVENUE—WAR REVENUE ACT—CAPITAL INVESTED IN BANKING—NATIONAL BANKS—MEANING OF "SURPLUS" IN ASSESSMENT OF CAPITAL.

War Revenue Act 1898 (30 Stat. 448) § 2, provides that bankers, and persons and firms engaged in various other similar occupations, employing a capital not exceeding $25,000, shall pay a certain tax, and a certain additional amount for every $1,000 of capital above $25,000, and that in estimating capital surplus shall be included. *Held* that, inasmuch as the act does not refer exclusively to national banks, the word "surplus" as used in the act will not be restricted, in assessing a national bank, to the meaning given it in previous national bank legislation, as