COMMONWEALTH *vs.* GEORGE B. HUGO & others.

Norfolk.    April 2, 1895. — June 21, 1895.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Intoxicating Liquors — Jurisdiction — Sale and Delivery.*

On the trial of an indictment for exposing and keeping for sale intoxicating liquors in a town in the neighborhood of Boston, A., a licensed dealer in intoxicating liquor in Boston and the owner of an express run by him between Boston and the town, and B. and C., who were his servants in running the express and were paid by him to deliver liquors in the town, may be properly convicted if there was evidence on which the jury might find that the liquors were not delivered until they reached in the town the hands of those ordering them, and that until then they were at the risk of the defendant A.

INDICTMENT, charging George B. Hugo, Albert P. Hauck, and Mark J. Cody with exposing and keeping for sale intoxicating liquor in the town of Hyde Park. At the trial in the Superior Court, before *Maynard*, J., there was evidence tending to show that the defendant Hugo was a licensed dealer in intoxicating liquors in Boston; that he was also a common carrier of merchandise between Boston and Hyde Park, being the proprietor of an express route; that the defendants Hauck and Cody were in his employ as such common carrier, in the capacities of messenger and driver, respectively; that on July 11, 1894, one Rooney, a police officer of Hyde Park, arrested the defend-

ants Hauck and Cody, and searched the express wagon which they were then driving in the streets of Hyde Park ; that upon it, among other articles, we're found eleven cases of lager beer, each marked with the name of the person to whom they were to be delivered, and two packages containing intoxicating liquor, also so marked ; and that there were numerous orders in blank, in the following form :

          " Hyde Park, Mass.,          189 .
" To          .   Purchase for me, as my agent, from
     Boston, Mass., the following articles, delivery of which you will· accept for me, as my agent, from said          in said Boston, to be shipped by          at my expense.
     Article.          Price.          Name.          Address." ·

There was also found on the team an expressman's book, containing a list of the articles upon the wagon, and against them the names of the persons to whom they were to be delivered, corresponding exactly to the marks and names upon the boxes and. packages containing intoxicating liquor.

One Concannon testified that previous to July 11, and within ·the time mentioned in the indictment, he stopped the defendants Hauck and Cody, who were driving along the street in said Hyde Park, and told them that he wanted them to purchase for him twelve bottles of lager beer of George B. Hugo and Company, in Boston ; that thereupon he was told by one or both of the defendants Hauck and Cody, that he must sign an order similar to the one above given ; that he instructed the defendant Hauck to sign it for him, as he, Concannon, was unable to write his name ; that the beer so ordered was a part of the intoxicating liquor seized by Rooney on July 11; that he paid Hauck the price of the twelve bottles of beer at the time of giving the order ; that it was to be at his risk after being set apart for him in the store of George B. Hugo and Company in Boston ; that it was to be delivered to him in Hyde Park that night by said Hugo's express ; and that the beer had never been received by him, having been confiscated to the use of the Commonwealth.

One Davis testified that on July 3 he gave to the agent of Hugo's express an' order for one half-barrel of ale ; that on the evening of that day it was delivered to him by the defendant

Hauck, who refused to take the money therefor; that a month afterward the defendant Cody called upon him in Boston with a bill from George B. Hugo and Company; and that he paid a part of the price of the ale. This was controverted by the defendants, and the fact of payment was left to the jury.

Rooney testified that he had seen the defendants Hauck and Cody delivering beer from the express wagon on pay-days, at a mill in Hyde Park, to operatives who he knew were too poor to advance the money for it.

There was other evidence, uncontradicted, that Hugo's express had places of business for the receipt of orders in four places in Hyde Park, and in two general express offices in Boston; that no business of the express was done in the licensed place of business of the defendant Hugo in Boston; that the course of business pursued by the defendant Hugo was to furnish blank orders similar to the one above given, to be filled out by persons who desired the service of the express for any purpose, left at one of the various places of business of the express in Hyde Park, and, if it was desired that a purchase should be made of anything, accompanied by the money; that in so far as the business of the express related to the carrying of intoxicating liquor, and as that liquor came from the defendant Hugo's licensed place in Boston, the *modus operandi* was to forward the order containing the money to George B. Hugo and Company in Boston, and that thereupon the defendant Hugo, if the order met his approval, caused the liquors required by the order to be separated from his general stock, set apart and marked with the name of the person sending the order, and, in case of liquors other than beer, the quality and price of the article sold. Hugo testified that in no case where money accompanied the order had he refused to fill it. He also testified that he was the controlling member of the firm of Hugo and Company, licensed liquor dealers in Boston, the company being his wife, who was a partner in the license for the purpose of keeping it alive in case of his death; and that no charge was made for the delivery of intoxicating liquors, whether by the express or any other common carrier, but that the cost of delivery was included in the price charged for liquor and received by Hugo and Company before the goods were delivered to the carrier.

One Auboushon testified that he worked in a store in Hyde Park where Hugo's express had an order-box; that he gave the orders to the defendant Cody from the drawer in which they were placed; and that he wrote an order for goods for himself upon one of the blanks, and filled out the blank as follows: " To George Hugo & Co. Purchase for me as my agent, from George Hugo & Co., Boston, Mass. [naming articles], delivery of which you will accept for me, as my agent, from said George Hugo & Co., in said Boston, to be shipped by Hugo's express at my expense." He further testified that this order was given to Cody, with others; that he ordered beer or whiskey nine or ten times; and always received the liquor, which was delivered at his place; that he always enclosed the money with the order; that his orders were always given to one of the defendants Hauck or Cody; that they would call three times a week; that he would occasionally write an order, addressed to Hugo, saying, Please send me so and so, and put in the money; and that the orders for liquors were always given to either of the defendants Hauck or Cody.

The defendants asked the judge to rule that there was no evidence to submit to the jury, and to direct a verdict of not guilty as to each defendant. The judge refused so to rule; and the defendants excepted.

The defendants also asked the judge to rule that the defendants Hauck and Cody, being common carriers, had a right to receive orders for merchandise accompanied by the money in Hyde Park, to transmit the same to Boston, and return the articles purchased to the vendee in Hyde Park; that this would not constitute a sale of the article in Hyde Park, and that it made no difference whether the article so purchased was intoxicating liquor or not. The judge refused so to instruct the jury, but gave full instructions as to what would constitute a sale and delivery, and further instructed the jury that the defendant Hugo, or Hugo and Company, had, by virtue of the license, a right to sell and deliver liquors at his place so licensed in Boston, and if the sale was there consummated so that the title to the liquors passed to the vendee, he then, as a common carrier or otherwise, with or without compensation, had the right to transport said liquor to such place as the owner

might direct; that the defendants Hauck and Cody, as common carriers or otherwise, had the right to receive money in Hyde Park from any person with an order therewith to purchase intoxicating liquor for such person in Boston or elsewhere, and deliver the liquor so purchased to him in Hyde Park, but not as the agents of the express company to so purchase and deliver from Hugo and Company.

After verdict and before judgment the defendants Hauck and Cody filed a motion in arrest of judgment. The judge overruled said motion, and also a motion to quash made before the impanelling of the jury ; and the defendants excepted.

The jury returned a verdict of guilty against each of the defendants ; and they alleged exceptions.

*H. H. Pratt,* for the defendants.

*R. O. Harris,* District Attorney, for the Commonwealth.

MORTON, J. The motions to quash and in arrest of judgment have been waived, and therefore need not be considered.

Notwithstanding the form of the orders, there was evidence on which the jury properly could find that the liquors were not delivered until they reached in Hyde Park the hands of those ordering them, and that until then they were at the risk of the defendant Hugo. The jury might have found that the express was owned by the defendant Hugo, and used and run by him as a means of delivering the liquors that were ordered of him ; and that the defendants Hauck and Cody were his servants, and were paid by him to deliver the liquors. The jury might have found also that a delivery to the express was no more a delivery to a common carrier in the ordinary course, than would be a delivery to the parcel wagon run by a merchant in Boston to accommodate his customers in Boston and its suburbs. The case is settled by former decisions. *Suit* v. *Woodhall,* 113 Mass. 391. *Commonwealth* v. *Greenfield,* 121 Mass. 40. *Commonwealth* v. *Burgett,* 136 Mass. 450.

*Exceptions overruled.*