JAMES L. CAMERON v. L. E. FELLOWS, Judge Thirteenth Judicial District of Iowa.

**Illegal Sales of Liquor:** EVIDENCE. Sale of beer is at customer's saloon, where one having it in a cold storage building takes orders at saloons, and then gets the beer at the cold storage place and delivers it at the saloon, there collecting the pay.

Same: *Nuisance.* As under Code section 2448, the selling or keeping for sale of intoxicating liquors must be carried on in a particular building, a wholesaler cannot keep the liquor in a certain building and then go to saloons and take orders and deliver the liquor at the saloons; and, if he does, he is guilty of maintaining a liquor nuisance.

Mulct Law: STATEMENT OF CONSENT. *Record.* Under Code section 2450, requiring that, on a canvas by the board of supervisors of a statement of consent to sale of intoxicating liquors in a county, their finding as to the results in the county and the various towns and townships therein shall be entered of record, it is not necessary to add the numbers in the various towns and townships to give the result in the county,—this being a mere matter of computation,— and the results in the town and townships may be given by divisions.

"LAST PRECEDING ELECTION" DEFINED. The written statement of consent to the sale of intoxicating liquors, which Code section 2449 requires to be filed with the county auditor, signed by sixty-five per cent. of those who voted at the last preceding election, as shown by the poll books of said election, does not have to be signed by sixty-five per cent. of the voters at the election next preceding the canvass of the statement by the board of supervisors, as the canvass may be had at any time before the poll books cease to be a part of the records of the county, which is eighteen months after the election, section 1145 providing that they shall at that time be destroyed.

Abbreviations: ORAL PROOF AS TO MEANING. That "Wash.," in the record of the finding by a board of supervisors, on a canvass of a statement of consent to sale of intoxicating liquors in a county, of the result in the various towns and townships, stands for "Washington," may be proven by oral evidence, as this does not add to the record.

Wednesday, October 24, 1899.

Henry Potratz was accused of contempt of court in violating a decree permanently enjoining him from maintaining a liquor nuisance in the Thirteenth judicial district of Iowa. On hearing, he was discharged, and thereupon a writ of certiorari sued out.—*Annulled.*

*E. R. Acres* for plaintiff.

*John B. Kaye* for defendant.

LADD, J.—A statement of consent to the sale of intoxicating liquors in Winneshiek county, signed by more than 65 per cent. of the voters who cast their ballot at the general election of 1896, was filed with the county auditor May 1, 1897. Due notice of the intention of the board of supervisor to canvass such statement at its January, 1898, session, was given, and on January 7th of that year this record was made:

"The board then took up the canvass of the liquor petition, completing the same, after finding the result to be as follows:

| Townships. | Voters. | Signers. |
|---|---|---|
| Bloomfield | 278 | 214 |
| Military | 270 | 321 |
| Wash. 1st | 120 | 116 |
| "    2d | 183 | 164" |

I. The different townships were entered as above, with the number of voters, and signers. Below "Decorah" and "Calmar," as "Wash.," were ditto marks and numerals (1st, 2d, etc.), corresponding to the number of wards. It is said this record is insufficient, and that oral evidence was not admissible to explain its alleged defects or to supply omissions. Section 2450 of the Code requires the board's "finding as to the result in the city having over five thousand inhabitants, or the county, as the case may be, and the various towns and townships therein shall be entered of record. And such finding shall be effectual for the purpose herein contemplated until revoked as herein provided." It was not necessary to add the numbers in each town and township in order to indicate the number in the county, or the relative number of voters and signers. That was a mere matter of computation, and was indicated quite as definitely by the finding of the number who voted and signed in each of the precincts. This record was not as full as desirable. But

without explanation it indicated the number of voters and signers in Washington, Calmar, and Decorah by divisions. Whether these were for convenience in counting, because of the existence of wards, or the use of separate papers for the statement of consent, is not disclosed.    It may be that oral evidence was not admissible to show what was meant by the use of the numerals, indicating some kind of a division, for that this would add to the record; but, without this evidence, we are of opinion that the record showed the number of electors and voters in the places mentioned.

That "Wash." stood for "Washington" might be proven by oral evidence.    This did not add to the record but made clear the meaning of an abbreviation. Such evidence has been uniformly received to show the conventional meaning of abbreviations, or the habit of parties in using particular abbreviations for certain purposes, though not to show the intention in making use of them.    See cases collected in 1 Am. & Eng. Enc. Law, 99; *Barton v. Anderson,.* 104 Ind. 578 (4 N. E. Rep. 420).

II.    If it be conceded that the law as it formerly stood. has been repealed by the Code, it does not follow that a. statement of consent signed prior to October 1, 1897, could not be considered by the board of supervisors.    Section 2449,. in part, reads:    "A written statement of general consent. shall be filed with the county auditor, signed by sixty-five per cent. of all the legal voters who voted at the last preceding election, as shown by the poll books of said election, residing within such county and outside of the corporate limits of cities having a population of five thousand or over.'"

This surely does not so limit the time of filing. Again, it is urged that though the number of signers. equaled sixty-five per cent. of the voters of 1896, they were less than such per cent. of the voters of 1897, and that the election next preceding the canvass by the board of supervisors is the one to be considered in estimating the percentage of signers.    Nothing contained in the statutes;

supports this view. But as the statement of consent must be compared with the poll books in making the canvass by the board of supervisors, and as the voters who cast their ballots at the last general election can, under the statutes, only be ascertained from the poll books, such canvass must take place while these are a part of the records of the county. Section 1145 of the Code directs the destruction of the poll books after the lapse of eighteen months, unless needed in an election contest, and after that time they cease to be a part of the records of the county auditor's office. The statement of consent in this case was canvassed within nine months after it was filed, and before the poll books of the election of 1896 were required to be destroyed.

III| The accused acted as agent of the Fred Miller Brewing Company, and thus explains the manner of transacting business: "They send the beer here on the train from the brewery at Milwaukee. Then it is unloaded at the train, unloaded from the refrigerator cars, and put into this cold storage building. Then I take orders at the various saloons and places where beer is sold about the town. When they give the order I go to the cold storage and get the beer and deliver it to them. I collect the money for the beer. They pay where we deliver to the parties in town." It then appears that the order was taken at the customer's saloon, the beer delivered there, and the purchase price paid at the same place. Where a contract of sale is made and entirely performed at a particular locality, it is idle to claim that the sale was somewhere else because the seller there procured the articles sold. *Brewing Co. v. De France,* 91 Iowa, 108. Under Section 2448 of the Code the selling or keeping for sale must be carried on in a particular building. See subdivisions 2 and 4. The keeping of a place under the mulct law does not authorize the peddling of beer in all parts of the city. If this may be done at wholesale, it can be done at retail, as no distinctions are made by the statute. The accused might lawfully sell beer

at the cold storage plant, but not elsewhere.   His sales at
the different saloons and other places in the city were unlaw-
ful, and it was in keeping beer with the purpose of making
such sales that the building he occupied was used.   It was
held in *State v. Viers,* 82 Iowa, 397, that keeping intoxicat-
ing liquors in a building with intent to sell unlawfully any-
where in the state constituted a nuisance.   The recent case
of *Bartel v. Hobson,* 107 Iowa, 644, is precisely in point.
See, also, *State v. Snyder,* 108 Iowa, 205.   It follows that,
as accused was guilty of contempt, the order discharging him
must be annulled, and such further proceedings had as the
law may require.—ANNULLED.