CAMPBELL BAKING CO. v. CITY OF HARRISONVILLE, MO., et al.

No. 8327.

Circuit Court of Appeals, Eighth Circuit.

May 9, 1931.

Rehearing Denied July 9, 1931.

VAN VALKENBURGH, Circuit Judge, dissenting.

Herbert D. Mason and Stewart Lynch, both of Tulsa, Okl. (John H. Lathrop, of Kansas City, Mo., and Harold R. Williams and Mason & Williams, all of Tulsa, Okl., and Lathrop, Crane, Reynolds, Sawyer & Mersereau, of Kansas City, Mo., on the brief), for appellant.

Raymond G. Barnett, of Kansas City, Mo. (Allen B. Glenn, of Harrisonville, Mo., and Cleary & Barnett, of Kansas City, Mo., on the brief), for appellees.

Before STONE, VAN VALKENBURGH, and BOOTH, Circuit Judges.

STONE, Circuit Judge.

This is an action to enjoin enforcement of an ordinance of the city of Harrisonville, Mo., levying a license tax upon appellant. From an order denying a temporary injunction, this appeal is brought.

The here material provision of the ordinance is as follows:

"Section 2-A. *License:* Each person, firm or corporation engaged in selling or delivering any goods or merchandise of any kind, at wholesale or retail, to any firm, person or corporation in the City of Harrisonville, Missouri, shall pay at the rate of $2.00 per day or $30.00 per month or $125.00 for six months or $200.00 per year; but this Section shall not apply to any person, firm or corporation selling at their regular established place of business. Any person, firm or corporation making any such sale or delivery, without first procuring a license and paying the said sum of $2.00 per day, or $30.00 per month or $125.00 for six months or $200.00 per year, shall be guilty of a misdemeanor, and, upon conviction, shall be fined in the sum of not less than $10.00 nor more than $25.00."

■ This ordinance expressly applies to those who sell or deliver goods or merchandise in Harrisonville with no regular established place of sale therein. The undisputed business methods of appellant show it within the ordinance. Appellant has a large plant at Kansas City, Mo., where it makes bread and cakes. Among its customers are retail merchants in towns and cities which are sufficiently near to Kansas City to permit daily delivery by trucks of appellant over regularly established routes. One of these delivery routes covers seven communities, including Harrisonville. There are seven regular merchant customers in Harrisonville. These customers have standing orders (subject to approval of the plant manager) with appellant for daily deliveries to them at their places of business in Harrisonville. Each day appellant's deliveryman brings to each merchant the desired bread and cakes and picks up any unsold stock for return and credit. This is all of the business done by appellant in Harrisonville. That appellant has no regular established place of business in Harrisonville and that it makes deliveries of merchandise therein is clear. Also it is clear that the sales of the bread and cakes to the merchants at Harrisonville take place there. This is true because the necessary element of a sale is the passing of title (Norfolk & W. Ry. Co. v. Sims, 191 U. S. 441, 447, 24 S. Ct. 151, 48 L. Ed. 254; De Bary v. Souer, 101 F. 425, 428 [C. C. A. 5]; State v. Wingfield, 115 Mo. 428, 22 S. W. 363, 37 Am. St. Rep. 406) and this, under the above method of doing business, does not occur until the bread and cakes are delivered to the merchants there. At that time and place, title (as well as possession) passes, and not until that occurs is there any sale. The St. Joze Indiano, 1 Wheat. 208, 4 L. Ed. 73; The Carlos F. Roses, 177 U. S. 655, 20 S. Ct. 803, 44 L. Ed. 929; Buckingham v. Dake, 112 F. 258, 269 (C. C. A. 8); De Bary v. Souer, 101 F. 425 (C. C. A. 5); McElwee v. Metropolitan Lumber Co., 69 F. 302, 305 (C. C. A. 6); Scharff v. Meyer, 133 Mo. 428, 34 S. W. 858, 54 Am. St. Rep. 672. Cases where the seller made deliveries and the sale was held to be at the place of delivery are following: State v. Houts, 36 Mo. App. 265; Doster v. State, 93 Ga. 43, 18 S. E. 997; Merrill v. State, 175 Ind. 139, 93 N. E. 857, 44 L. R. A. (N. S.) 439; Cheadle v. Roberts, 150 Iowa, 639, 130 N. W. 368; Carter v. Bartel, 110 Iowa, 211, 81 N. W. 462; Cameron v. Fellows, 109 Iowa, 534, 80 N. W. 567; Bartel v. Hobson, 107 Iowa, 644, 78 N. W. 689; Com. v. Bottom, 140 Ky. 212, 130 S. W. 1091; Lochnar v. State, 111 Md. 660, 76 A. 586, 19 Ann. Cas. 579; Com. v. Hugo, 164 Mass. 157, 41 N. E. 123; Com. v. Eggleston, 128 Mass. 408; Com. v. Greenfield, 121 Mass. 40; State v. Kind, 80 N. J. Law, 176, 75 A. 438, affirmed 80 N. J. Law, 466, 78 A. 1135; Town of Montclair v. Scola, 76 N. J. Law, 137, 69 A. 451; Shuster v. State, 62 N. J. Law, 521, 41 A. 701, affirmed 63 N. J. Law, 355, 46 A. 1101; People v. Capen, 26 Hun (N. Y.) 377; State v. Wernwag, 116 N. C. 1061, 21 S. E. 683, 28 L. R. A. 297, 47 Am. St. Rep. 873.

■ The main contentions of appellant are that the ordinance is invalid as violating the Fourteenth Amendment, and also as being without the taxing power of the city under the state statutes and Constitution.

*The Fourteenth Amendment.* The contention as to violation of the Fourteenth Amendment is that the ordinance has made a taxation classification based upon nonresidence, and that such character of classification is arbitrary, unreasonable, and unjust, and denies that equal protection of the laws required by the Amendment. The ordinance is, in form, a revenue measure. We see no reason to disagree with the view of the trial court that the evidence failed to show any ulterior motive in its passage—such as police regulation under the disguise of a tax—and therefore we shall consider and determine the questions here raised from the basis that this is genuinely a revenue enactment.

The very nature and purposes of taxation usually prevent any exact equality. This situation is accentuated when the character of tax is that of a license or occupation imposition. Abstractly, there is no more reason to tax a butcher than there is to tax a baker, but the power to make selections among avocations for raising revenue exists, and the exercise of that power is governed by practical considerations which may appeal to the taxing body and are not subject to revision by courts. Southwestern Oil Co. v. Texas, 217 U. S. 114, 121, 30 S. Ct. 496, 54 L. Ed. 688. This selection is particularly free in license or occupation revenue legislation. Oliver Iron Mining Co. v. Lord, 262 U. S. 172, 179, 43 S. Ct. 526, 67 L. Ed. 929. In so far as the Fourteenth Amendment is concerned, the sole restriction upon such selection is that it shall not involve a classification which is "palpably arbitrary," which is construed to mean that the classification "must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." Ohio Oil Co. v. Conway, 281 U. S. 146, 160, 50 S. Ct. 310, 314, 74 L. Ed. 775. A very great many cases involving classifications for occupational or license taxes by states or political subdivisions thereof have been before the Supreme Court of the United States, and each has been necessarily rested upon the particular situation involved therein. However, we think the decision in Singer Sewing Mach. Co. v. Brickell, 233 U. S. 304, 34 S. Ct. 493, 58 L. Ed. 974, involved a situation so identical or at least analogous to that here presented that it must govern our determination. The statute in that case is identical in essentials with the ordinance here, and is more restrictive, in one sense, in that it expressly applied to but one article—sewing machines. In that case, the Supreme Court sustained the tax classification between "the business of selling sewing machines from a regularly established store and the business of selling them from a delivery wagon" (page 315 of 233 U. S., 34 S. Ct. 493, 497), because there was a difference "in the mode of doing business" (page 315 of 233 U. S., 34 S. Ct. 493, 497). The same difference in "mode of doing business" is here present. The Fourteenth Amendment is not violated by this ordinance.

■ *Power Under State Law.* The Missouri statutes (Rev. St. Mo. 1929, § 7287, formerly Rev. St. Mo. 1919, § 8702) provide that "no municipal corporation in this state shall have the power to impose a license tax upon any business avocation, pursuit or calling, unless such business avocation, pursuit or calling is specially named as taxable in the charter of such municipal corporation, or unless such power be conferred by statute." Harrisonville is not a charter city, but is a city of the "Fourth Class," organized under general statutes governing cities of that class. Therefore its power to levy license taxes must be "conferred by statute." The statute relied upon by appellee as conferring the power to impose this tax is section 7046, Rev. St. Mo. 1929 (formerly section 8497, Rev. St. Mo. 1919, as amended by Laws of 1923, p. 267), which is a grant of power to cities of the fourth class to levy license taxes.[1]

---

[1] "Sec. 7046. Power to license, tax and regulate certain businesses and occupations.—The mayor and board of aldermen shall have power and authority to regulate and to license and to levy and collect a license tax on auctioneers, druggists, hawkers, peddlers, banks, brokers, pawnbrokers, merchants of all kinds, grocers, confectioners, restaurants, butchers, taverns, hotels, public boarding houses, billiard and pool tables and other gaming tables, bowling alleys, hay scales, lumber dealers, livery stable keepers, real estate agents, loan companies, loan agents, public buildings, public halls, opera houses, public grounds, concerts, photographers, bill posters, artists, agents, porters, runners, drummers, public lecturers, public meetings, circuses and shows, for parades and exhibitions, moving picture shows, horse or cattle dealers, patent right dealers, stockyards, wagon yards, inspectors, gaugers, mercantile agents, insurance companies, insurance agents, express companies and express agents, telegraph companies, telephone companies, manufacturing and other corporations or institutions, automobile agencies, and dealers, public garages, automobile repair shops or both combined, dealers in automobile accessories, gasoline filing stations, soft drink stands, ice cream stands, ice cream and soft drink stands combined, soda fountains, street railroad cars, hackney -arriages, omnibuses, carts, drays, transfer and job wagons, ice wagons, oil wagons, whether wholesale or retail, and all other vehicles, traveling and auction stores, plumbers, and all other business, trades and avocations whatsoever, and fix the rate of carriage of persons and wagonage, drayage and cartage, of property; and to license, tax, regulate or suppress ordinaries, money brokers, money changers, intelligence and employment offices and agencies, public masquerades, balls, street exhibitions, dance houses, fortune tellers, pistol galleries,

While this section, after an extended enumeration of avocations, uses the words "and all other business, trades and avocations whatsoever," the Missouri decisions seem to nullify this provision and to hold, not only that it does not extend the enumerations, but that it has not even the value of allowing application of the doctrine of ejusdem generis. Keane v. Strodtman, 323 Mo. 161, 18 S.W.(2d) 896, 898; Siemens v. Shreeve, 317 Mo. 736, 296 S. W. 415, 416; Viquesney v. Kansas City, 305 Mo. 488, 266 S. W. 700; Pierce City v. Hentschel (Mo. Sup.) 210 S. W. 31; Kansas City v. Grush, 151 Mo. 128, 52 S. W. 286, and see Kansas City v. Lorber, 64 Mo. App. 604. In the Siemens Case, the court traces the judicial history (St. Louis v. Laughlin, 49 Mo. 559; St. Louis v. Herthel, 88 Mo. 128; City of St. Louis v. Bowler, 94 Mo. 630, 7 S. W. 434) which led up to the enactment of this section and in which cases the doctrine of ejusdem generis had been upheld, and (page 743 of 317 Mo., 296 S. W. 415, 418) says:

"From the foregoing it appears that the city of St. Louis, under its constitutional grant of power to frame a charter had by a blanket clause arrogated to itself the power to impose a tax on all occupations, professions, and pursuits, whether specially named or not, and what the city of St. Louis had done every other city, whether chartered under constitutional grant of power or by legislative enactment, would seek to do. Such was the situation after the Bowler decision in 1887, and it was evidently for the purpose of checking this wholesale delegation of the taxing power through a statutory expression of a previously well-defined, salutary policy that section 1900, R. S. 1889, was enacted. It is, in effect, a legislative finding and declaration of policy that, unless the business avocation, pursuit, or calling sought to be taxed by the municipal corporation is specially named as taxable in the charter, or unless such power is conferred by statute,

corn doctors, private venereal hospitals, museums, menageries, equestrian performances, horoscopic views, telescopic views, lung testers, muscle developers, magnifying glasses, ten-pin alleys, ball alleys, billiard tables, pool and other gaming tables, theatrical or other exhibitions, boxing and sparring exhibitions, shows and amusements, tippling houses, gift enterprises and sales of unclaimed goods by express companies, or common carriers; to license, tax and regulate hackmen, draymen, omnibus drivers, porters and all others pursuing like occupations, with or without vehicles, and to prescribe their compensation; and to regulate, license and restrain runners for steamboats, cars, stages, and public houses; and to license ferries, and to regulate the same and the landing thereof within the limits of the city, and to license and tax auto liveries, auto drays and jitneys."

the power to tax is not clearly and unambiguously delegated, and therefore consistent with the general sound policy of the law, it cannot be exercised. We think this statute applies to all municipal corporations whether under general or special charter. We inferentially so held in Pierce City v. Hentschel (Mo. Sup.) 210 S. W. 31, loc. cit. 32; Kansas City v. Grush, 151 Mo. 128, loc. cit. 134, 52 S. W. 286, and Viquesney v. Kansas City, 305 Mo. 488, loc. cit. 498, 266 S. W. 700. Such was the direct and unequivocal ruling of the Kansas City Court of Appeals in Kansas City v. Lorber, 64 Mo. App. 604, loc. cit. 607. In Viquesney v. Kansas City, 305 Mo. 488, 266 S. W. 700, and City of St. Louis v. Baskowitz, 273 Mo. 543, 201 S. W. 870, cases especially relied upon by respondents, this particular question was neither raised nor considered, and hence they are not controlling authorities in this case."

While some of the above cases are based upon charter powers, there seems to be no reason why the same principle of construction should not apply in treating grants of power under charters and grants under a statute when the relation in thought of charter and statute grants in section 7287 is considered. Therefore we accept the above decisions as determining that there must be specific enumeration of the avocation, and that no avocation is taxable by appellee, unless it comes within one of those set forth in section 7046.

Appellant urges that, if this ordinance may be regarded as taxing a calling which is included within any of the avocations enumerated in the statute, it does this by subdividing such avocation, and that such is not permissible because the classifications for license tax purposes are made by the statute itself. It cites several Missouri cases. We have examined all of these citations as well as others. There are expressions in several opinions which, taken alone, support this contention (see City of St. Louis v. Baskowitz, 273 Mo. 543, 563, 564, 201 S. W. 870; State v. Miksicek, 225 Mo. 561, 125 S. W. 507, 511, 135 Am. St. Rep. 597; Kansas City v. Grush, 151 Mo. 128, 135, 52 S. W. 286), but in all of these cases the subclassification was in itself regarded as arbitrary. Unless these decisions be held to mean that no subclassification is allowable where such is arbitrary, it is difficult to reconcile them with Eldorado Springs v. Highfill, 268 Mo. 501, 188 S. W. 68, which is later than the Grush and Miksicek Cases, only slightly older than the Baskowitz Case and decided by the same

court. Attempting to reconcile the Highfill Case with the other cases, we think the rule to be deduced is that there may not be subclassifications of an avocation enumerated in the statute unless such subclassification be reasonable and natural; that is, not arbitrary.

■ The classification attempted by this ordinance is of persons selling or delivering within Harrisonville who have no established place of sale therein. Such a classification has been held not arbitrary. Singer Sewing Mach. Co. v. Brickell, 233 U. S. 304, 34 S. Ct. 493, 58 L. Ed. 974. This classification is general, in that the ordinance does not specify any particular article of sale nor any particular calling beyond that it shall be such as involves a sale or delivery within the city without an established place of sale therein. Thus it might attach to more than one of the avocations enumerated in the statute—such as "hawkers, peddlers, * * * merchants of all kinds, grocers, confectioners, * * * butchers, * * * lumber dealers * * * photographers," and possibly others. Since we have above determined that appellant sells and delivers in Harrisonville, and has no established place of sale therein, it comes within the broad terms of the ordinance. However, those broad terms cannot be applied to appellant, unless the business which it transacts in Harrisonville is within an avocation enumerated in the statute to which the meaning of the ordinance can be properly attached.

■ Appellee urges that such business may properly be regarded as coming within any of the statutory enumerations following: Peddler, bakery wagons, manufacturer, or merchant. We are directed to a statutory definition of peddler (Rev. St. Mo. 1929, § 13312), but that definition is for police and not revenue purposes (State v. Webber, 214 Mo. 272, 279, 113 S. W. 1054, 15 Ann. Cas. 983; Emert v. Missouri, 156 U. S. 296, 311, 15 S. Ct. 367, 39 L. Ed. 430). A judicial definition of peddlers is "persons who practice carrying merchandise about from place to place for sale, as opposed to traders who sell at established shops" (St. Louis v. Meyer, 185 Mo. 583, 595, 84 S. W. 914, 918) or "an itinerant or traveling trader who carries goods about in order to sell them, and who actually sells them to purchasers, in contradistinction to a trader who has goods for sale, and sells them in a fixed place of business" (Id., 185 Mo. page 596, 84 S. W. 914, 918). In general, the idea of a peddler necessarily includes the carriage of articles

around in search of customers to whom sales and deliveries are made. Appellant does no such character of business, but sells and delivers to merchants who are its daily customers under an established business arrangement.

■ There is no enumeration of "bakery wagons" in the statute. There is a general enumeration of "all other vehicles," but this ordinance is not, by its terms or any natural intendment, a "vehicle" tax. The term "manufacturing * * * corporations," as used in the statute, implies a business of manufacturing which is carried on within the city —the license being for the privilege of carrying on that character of business within the city.

■ "Merchants of all kinds" is a broad designation. There is a statutory definition of merchant (Rev. St. Mo. 1929, § 10075 and section 10099), which is as follows:

*"Who Declared to be a Merchant.*—Every person, corporation or copartnership of persons, who shall deal in the selling of goods, wares and merchandise, including clocks, at any store, stand or place occupied for that purpose, is declared to be a merchant."

This definition is in a taxing statute, but it is part of a statute having to do with an ad valorem property tax on the amount of "all goods, wares and merchandise which they may have in their possession or under their control" (section 10077), and the license required is purely to aid in procuring the property tax—the fee therefor is nominal, being but 50 cents (section 10086). A necessity for an ad valorem tax of this character would be the location within the state of the goods taxed. This is not necessarily a definition of "merchants of all kinds," as used in section 7046, which relates only to license or privilege taxes. As applied to privilege taxes, the term is defined as " 'one making a business of buying and selling commodities; a trafficker; a trader.' Secondary meaning: 'One who carries on a retail business' " (Viquesney v. Kansas City, 305 Mo. 488, 498, 266 S. W. 700, 703), and by this court as "persons engaged in the business of buying and selling merchandise or other personal property in the usual course of trade" (Union County Nat. Bank v. Ozan Lumber Co. [C. C. A.] 179 F. 710, 715). Appellant sells bread within the city of Harrisonville and would therefore seem to be a merchant, because it is "one making a business of * * * selling commodities" (bread) and one "engaged in the business of * * * selling

merchandise or other personal property in the usual course of trade." Also see City of Kansas v. Vindquest, 36 Mo. App. 584. Appellant contends it is simply a manufacturer. But a manufacturer may, as to the articles made by him, become a merchant when he sells them. Ozan Lumber Co. v. Union County Nat. Bank, 207 U. S. 251, 256, 28 S. Ct. 89, 52 L. Ed. 195; State v. Richeson, 45 Mo. 575; State v. Whittaker, 33 Mo. 457; Kansas City v. Ferd Heim Brewing Co., 98 Mo. App. 590, 73 S. W. 302.

We think appellant comes within the terms of the ordinance and within the description of "merchant" in the statute, and therefore is subject to this tax.

■ Some argument is made as to the excessiveness of this tax showing its invalidity, but the evidence fails to show such excess. It shows appellant's sales in Harrisonville are approximately $8,000 annually, while the total tax for a year under this ordinance is $200, or 2½ per cent. of the sales. This is not so excessive as to suggest unreasonableness—even if the amount of a tax under a purely revenue measure can be considered as a test of the validity of the imposition.

The order denying the temporary injunction is affirmed.

VAN VALKENBURGH, Circuit Judge (dissenting).

I regret that I am unable to agree with my associates in the conclusion reached by them. This case has had an unfortunate history. Upon the original appeal I concurred in affirmance, chiefly on the ground that the decree below was on temporary hearing. Judge Scott dissented. On petition for rehearing it was made apparent that great injury had resulted to appellant, because of a multiplicity of suits in appellant's trade territory, based on identical or similar ordinances, and inspired by the published opinion in the instant case. It was shown that the controlling questions involved were as fully presented in this appeal as could be done on final hearing. Upon reconsideration, the rehearing was granted. It was hoped thereby to expedite the final determination of the controversy.

In the first opinion of this court, the expression "merchants of all kinds" contained in section 7046, Rev. St. Mo. 1929, granting power to cities of the fourth class to levy license taxes, was held to be a designation sufficient to include appellant, and to satisfy the requirements of section 7287, Rev. St. Mo. 1919. On rehearing, counsel for appellee,

while seeking to sustain this classification on the theory of ejusdem generis (rejected, as the majority opinion correctly holds, by controlling decisions of the Missouri Supreme Court) in brief and argument placed greater dependence upon the contention that appellee was a peddler as specially designated in section 7046, Rev. St. Mo. The majority opinion holds that appellant is a merchant, as named in the statute, and comes within the express terms of the ordinance. In that opinion, which expressly holds that the Campbell Baking Company is not a peddler, appellant is nevertheless apparently viewed as an itinerant vender as defined in Singer Sewing Machine Co. v. Brickell, 233 U. S. 304, 34 S. Ct. 493, 58 L. Ed. 974. The decision of the majority depends upon the conception that appellant is a merchant within the statutory designation, and that its sales take place in Harrisonville. The definition of "merchant" contained in Rev. St. Mo. 1929 (sections 10075 and 10099), which would exclude appellant, is rejected upon the rather fine distinction drawn between different kinds of taxing statutes. The general definition of a merchant contained in the Standard Dictionary is "a person who buys and sells commodities as a business and for profit; especially one who has a place of sale and stock of goods; a trader, a buyer, a shopkeeper; a storekeeper." This does not differ materially from those definitions as applied to privilege taxes, used by the Supreme Court of Missouri (Viquesney v. Kansas City, 305 Mo. 488, 266 S. W. 700), and by this court (Union County National Bank v. Ozan Lumber Co., 179 F. 710, 715). But none of these definitions apply to the business of appellant as disclosed beyond dispute by this record. Appellant is essentially a manufacturer. It does not buy and sell. It maintains no stock of goods. It manufactures upon orders of its regular customers, and delivers those orders by its own vehicles throughout its trade territory. In the majority opinion appellant is correctly described thus:

"Appellant has a large plant at Kansas City, Missouri, where it bakes bread and cakes. Among its customers are retail merchants in towns and cities which are sufficiently near Kansas City to permit daily delivery by trucks of appellant over regularly established routes. One of these delivery routes covers seven communities, including Harrisonville. There are seven regular merchant customers in Harrisonville. These customers have standing orders (subject to approval of the plant manager) with appel-

lant for daily deliveries to them at their places of business in Harrisonville."

The business of appellant, as it is alleged and shown to be, is that appellant manufactures in its bakery in Kansas City bread and other bakery products to fill the orders of its regular customers. It "delivers the bread and bakery products so sold, by means of bread trucks, which are its own private conveyances," to its said customers in Kansas City and vicinity, including the smaller towns, such as Harrisonville, in the surrounding trade territory. In Harrisonville it has seven customers "who have standing orders with it for the daily delivery of bread and cake, and to fill these orders the deliveryman takes with him daily from Kansas City sufficient bread and cake. The bread and cake is sold only at wholesale, no retail sales being made whatsoever, and there is no solicitation of sales of bread or cake from house to house, and there is no hawking or peddling by the Campbell Baking Company or its drivers."

"Manufacturing Corporations" are specifically named in section 7046, Rev. St. Mo., as subject to a license tax imposed by cities of the fourth class; but the majority opinion rightly holds that the term, as used in the statute, implies a business of manufacturing which is carried on within the city— "the license being for the privilege of carrying on that character of business within the city." Incidentally, it may be inquired why the same limitation does not apply to the term "merchants of all kind" as contemplated by the statute. It is, at least, extraordinary that such extraterritorial effect should be given to a local municipal ordinance.

The distinction between manufacturer and merchant is sharply drawn. In State of Missouri v. Richeson et al., 45 Mo. 575, the court held that: "One who manufactures and supplies goods to the previous orders of his customers alone, although he keeps on hand, but not for sale, the materials from which the manufactured articles are produced, is not a merchant within the meaning of the statute" —citing State v. West, 34 Mo. 427, in which it was said: "To be a merchant in the sense of the law, the dealer must have on hand goods, wares, and merchandise ready for sale and present delivery, and must also actually deal in the selling of the same."

The Kansas City Court of Appeals in Kansas City v. Butt, 88 Mo. App. 237, held that: "In the commercial world there is a dictinction between a wholesale dealer and a manufacturer of which the courts take judicial cognizance, and the charter and ordi-

nances of Kansas City impose a license tax upon a wholesale ice dealer but not on the manufacturer of ice." In the body of the opinion it is said: " * * * As so understood and recognized a wholesale dealer is one who buys and sells to other dealers. A manufacturer is one who is engaged in the process of reducing raw materials to a form for use, by the hands, by art or machinery. The fact that he sells the product at wholesale does not make him a wholesale dealer. Unlike the wholesale dealer who buys and sells to other dealers, he produces and sells."

In the foregoing, the writer of the opinion in City of Kansas v. Vindquest, 36 Mo. App. 584, concurred. The holding in these Missouri cases applies without qualification to the case at bar.

The majority opinion does not dispute the fact that appellant is a manufacturer. But it says "a manufacturer may, as to the articles made by him, become a merchant when he sells them." This is only partially true. In support of this statement, the following cases are cited: Ozan Lumber Co. v. Union County Nat. Bank, 207 U. S. 251, 256, 28 S. Ct. 89, 91, 52 L. Ed. 195; State v. Richeson et al., 45 Mo. 575; State v. Whittaker, 33 Mo. 457; Kansas City v. Ferd Heim Brewing Co., 98 Mo. App. 590, 73 S. W. 302, 303.

I have already shown that the distinction between manufacturer and merchant is expressly recognized in State v. Richeson, supra. State v. Whittaker thus restricts and limits the application of the term "merchant": "The statute defines a merchant to be a person who deals in the selling of goods, wares, and merchandise, at any store, stand or place occupied for that purpose. We cannot go beyond the statute to find any other definition of a merchant."

In Kansas City v. Ferd Heim Brewing Co., the same distinction is reiterated thus:

"A merchant must have a store, stand, or other place where he sells his goods.

"A manufacturer is not a merchant if he only manufactures goods to fill orders from his customers."

The Brewing Company was held to be a merchant because it was found to keep in stock, at a store, stand, or similar place, articles manufactured by it for sale in the ordinary course of trade.

In Ozan Lumber Company v. Union County Nat. Bank an Arkansas statute was sought to be declared discriminatory because paragraph 4 of the act provided that its

terms should not apply to merchants and dealers who sell patented articles in the usual course of business. The Supreme Court, incidentally, and in no sense in contradiction of the generally recognized distinction, said: "The manufacturer of a patented article, who also sells it in the usual course of business in his store or factory, would probably come within the exception of § 4. He may be none the less a dealer, selling in the usual course of his business, because he is also a manufacturer of the article dealt in."

This court made the distinction very clear in Union County National Bank v. Ozan Lumber Co. (C. C. A.) 179 F. 710, 714. It pointed out that the Supreme Court in the case cited (207 U. S. 251, 256, 28 S. Ct. 89, 52 L. Ed. 195) had imposed a significant qualification upon the word "manufacturer," and had held that it was only "such a manufacturer as sells in the usual course of business in his store or factory" that would come within the protection of paragraph 4 as a "merchant or dealer." Obviously, on this record, and on the accepted nature of its business, appellant is a manufacturer and not a merchant. It does not buy and sell. It produces for sale, and only for its order customers. It keeps no stock on hand for sale at any store or other place. The sales it makes of its product are made in its capacity as a manufacturer. It does not sell at retail, but upon order to merchants and dealers. If it is a Kansas City manufacturer and not a merchant, it is conceded that, as such, it is not named in the act permitting the imposition of license taxes by cities of the fourth class.

It is insisted, however, not only that appellant is a merchant within the purview of the Harrisonville ordinance, but that its sales take place at Harrisonville. The majority hold that "this is true because the necessary element of a sale is the passing of title * * * and this, under the above method of doing business, does not occur until the bread and cakes are delivered to the merchants there." This is a correct statement of the law as applied to some situations, but it is by no means of universal application, nor does it apply to the business of appellant. The Court of Appeals for the Sixth Circuit in McElwee v. Metropolitan Lumber Co., 69 F. 302, 305, recognized the general rule as stated, but held in that case that the provision that the vendor should deliver at Chicago did not prevent the title from passing

before such delivery, quoting Benjamin on Sales as follows: "Slight evidence is, however, accepted as sufficient to show that title passes immediately on the sale, though the seller is to make a delivery. The question, at last, is one of intent, to be ascertained by a consideration of all the circumstances."

The same text-writer, remarking that, "by the common law, all that was required to give validity to a sale of personal property, whatever may have been the amount or value, was the mutual assent of the parties to the contract," remarks that "there is no branch of the law of sale more confusing to the student than that of delivery. This results from the fact that the word is unfortunately used in very different senses; and unless these different significations are carefully borne in mind, the decisions would furnish no clue to a clear perception of principles." He points out that "the word 'delivery' is sometimes used with reference to the passing of the property in the chattel, and sometimes to the change of the possession of the chattel; in a word, it is used in turn to denote transfer of title or transfer of possession." In the latter sense delivery has reference merely to performance of the contract. Benjamin on Sales (7th Ed.) c. 2, pars. 674, 675, pp. 694, 695.

The Supreme Court in Norfolk & West Ry. Co. v. Sims, 191 U. S. 441, 447, 24 S. Ct. 151, 152, 48 L. Ed. 254, uses this pertinent language:

"While it may be entirely true that the property in the thing sold does not pass under a C. O. D. consignment until delivery of the goods and payment to the carrier, and hence it may be said that the sale is not completed until then, yet, as matter of fact, the bargain is made, and the contract of sale completed as such, when the order is received in Chicago, and the machine shipped in pursuance thereof.

"A sale really consists of two separate and distinct elements: first, a contract of sale, which is completed when the offer is made and accepted; and, second, a delivery of the property which may precede, be accompanied by, or follow, the payment of the price, as may have been agreed upon between the parties. The substance of the sale is the agreement to sell, and its acceptance. That possession shall be retained until payment of the price may or may not have been a part of the original bargain, but in substance it is a mere method of collection, and we have never understood that a license could be im-

posed upon this transaction except in connection with the prior agreement to sell, although, in certain cases arising under the police power, it has been held that the sale is not complete until delivery, and sometimes not until payment. Were it not for the opinion of the supreme court of North Carolina, we should have said that the words 'engaged in the business of selling the same within the state' had reference to the word 'selling' in its popular and ordinary sense of selling from a stock on hand or upon a special order to a manufacturer, and not to a mere method of collecting the money."

In Shuenfeldt et al. v. Junkermann (C. C.) 20 F. 357, Judge Shiras, of the Northern District of Iowa, held that: "The contract of a traveling agent, which required ratification by his principal, is deemed to have been made at the place where the ratification was given."

The decision of the Court of Appeals for the Fifth Circuit in De Bary et al. v. Souer, 101 F. 425, is thus epitomized in the syllabus: "Where a wholesale liquor firm, having an office in New York, where it pays the internal revenue tax required of such dealers by Rev. St. § 3244, accepts orders at such office, and directs the delivery of the goods thereon from a public warehouse in New Orleans, in which they are stored, such sales are made in New York, and not in New Orleans, and do not render the firm subject to a second tax as a dealer at New Orleans."

It is pointed out that "delivery is not an essential element in or to the completion of a sale of personal property."

The holding of this court in Buckingham v. Dake, 112 F. 258, was obviously dictated by the facts of that case as stated on page 270 of the Federal Reporter.

In this case the Harrisonville merchant has a standing order for a definite amount of bread and cake. This order, being subject to approval by appellant at Kansas City, and accepted there, makes the transaction a sale at Kansas City. The bread and cake is manufactured to fill this order, as it is to fill all orders. The subject-matter is as definite as is a machine or other specific article sold by a manufacturer. If the bread and/or cake thus ordered were shipped and delivered by common carrier, instead of by appellant's truck, would it be contended that the delivery was essential to the consummation of the sale? I think not. The language of the Supreme Court in Caldwell v. North Carolina, 187 U. S. 622, 632, 23 S. Ct. 229, 233, 47 L.

Ed. 336, while used in an interstate commerce case, is applicable here: "It would seem evident that, if the vendor had sent the articles by an express company, which should collect on delivery, such a mode of delivery would not have subjected the transaction to state taxation. The same could be said if the vendor himself, or by a personal agent, had carried and delivered the goods to the purchaser."

We have not here presented a case where the customer was not bound to take the bread and/or cake, manufactured to fill his order, unless he saw fit. The exceptional nature of the product, and the undisputed course of dealing, negative such a contention. I can take no exception to the view of the majority that, as said by the Supreme Court in Singer Sewing Machine Co. v. Brickell, 233 U. S. 304, 315, 34 S. Ct. 493, 497, 58 L. Ed. 974, "there is an evident difference, in the mode of doing business, between the local tradesman and the itinerant dealer, and we are unable to say that the distinction made between them for purposes of taxation is arbitrarily made." The vice in the conclusion here reached is that appellant, even though, for argument's sake, it be conceded to be a merchant, is not an itinerant dealer. Itinerant dealers or vendors are, in effect, peddlers (State v. Webber, 214 Mo. 272, 113 S. W. 1054, 15 Ann. Cas. 983) and the majority concede that appellant is not a peddler. See, also, Peterson Baking Co. v. City of Fremont, 119 Neb. 212, 228 N. W. 256. The Supreme Court makes the distinction clear in the closing paragraph of its opinion in Singer Sewing Machine Co. v. Brickell, supra: "It is quite plain, however, from a reading of the entire section, that the business of selling sewing machines by traveling salesmen is intended to be taxed, and the business of selling them at established places of business is intended to be left untaxed, so far as this section is concerned, although the machines sold at these places be delivered by wagons. Complainant is engaged in doing business of both kinds; and with respect to the itinerant sales it is subject to the tax under the section referred to."

The meaning is made still clearer by the language of the same court in Emert v. Missouri, 156 U. S. 296, 311, 15 S. Ct. 367, 370, 39 L. Ed. 430, which case is cited with approval in the Brickell Case: "The defendant's occupation was offering for sale and selling sewing machines, by going from place to place in the state of Missouri, in a wagon, without a license. There is nothing in the

case to show that he ever offered for sale any machine that he did not have with him at the time."

It is obvious that both of these cases had in mind the one-time sewing machine "agent," who went from place to place with a sewing machine in his wagon, soliciting, selling, and delivering wherever a customer could be found. Neither appellant nor its employees are engaged in a business of this nature. The Supreme Court of Nebraska in Peterson Baking Co. v. Fremont, supra, held an ordinance of like purport inapplicable to the baking company, and that an annual tax of $300 on the occupation was so excessive and confiscatory as to destroy the incentive to sell and deliver bread in Fremont, and to amount to a prohibition of the right to do so. This record discloses that local manufacturers and merchants in Harrisonville are taxed at the rate of from five to ten dollars per year, and that callings of every nature, including those with a vastly greater volume of business, pay a license tax negligible compared with that imposed upon appellant and those similarly situated. The City of Harrisonville by this ordinance is seeking to impose upon the citizens of other Missouri cities discriminations from which the commerce clause of the Federal Constitution mercifully protects the citizens of other states, otherwise similarly situated. Caldwell v. North Carolina, 187 U. S. 622, 23 S. Ct. 229, 47 L. Ed. 336; Rearick v. Pennsylvania, 203 U. S. 507, 27 S. Ct. 159, 51 L. Ed. 295; Dozier v. Alabama, 218 U. S. 124, 30 S. Ct. 649, 54 L. Ed. 965, 28 L. R. A. (N. S.) 264; Jewel Tea Co. v. Lee's Summit, Mo. (D. C.) 198 F. 532, affirmed (C. C. A. 8) 217 F. 965.

Here resort must be had to the equal protection guaranty of the Fourteenth Amendment. The majority opinion concedes, as it must, that so far as this amendment is concerned the classification shall not be "palpably arbitrary." The Supreme Court in Quaker City Cab Co. v. Pennsylvania, 277 U. S. 389, 400, 48 S. Ct. 553, 554, 72 L. Ed. 927, states the rule thus: "The equal protection clause does not detract from the right of the state justly to exert its taxing power or prevent it from adjusting its legislation to differences in situation or forbid classification in that connection, 'but it does require that the classification be not arbitrary, but based on a real and substantial difference having a. reasonable relation to the subject of the particular legislation.' Power Mfg. Co. v.

Saunders, 274 U. S. 490, 493, 47 S. Ct. 678, 679, 71 L. Ed. 1165."

The majority opinion calls attention to the expression of the trial court, in its memorandum opinion, that it was unable to say that the distinction made between the. local tradesmen and the itinerant dealer for purposes of taxation was arbitrarily made. The questions here raised are therefore considered "from the basis that this is genuinely a revenue enactment." Of course, it does not purport to be a police regulation. Later the same trial judge had occasion to pass upon the same questions in Campbell Baking Co. v. City of Maryville (D. C.) 31 F.(2d) 466. This case involved the same issues, arising under a substantially identical ordinance. The trial court, answering the question whether the effect of the ordinance is to deny to these complainants the equal protection of the laws, said that where "it appears from gross disparities, from extraordinarily large exactions (as compared with others), and from all the facts, that the real intent and purpose is, not to raise revenue, but to destroy the business of nonresidents, in the interest of resident dealers and business men, when that appears, then nonresidents are denied that equal protection of the laws which the Constitution guarantees to all.

"From the facts here it is impossible to escape the conclusion that discrimination against these complainants, so great as to prevent them from competing with local dealers, was the sole purpose and will be the only effect of this ordinance. For the reasons stated, I hold the ordinance invalid as sought to be enforced against complainants, and grant them the permanent injunction prayed."

It is true that Judge Otis decided this later case on final hearing, and upon what he deemed to be a fuller showing. There can be no doubt, however, that the business of appellant is conducted in the same manner throughout its trade territory. Under the conditions that have attended this appeal, it would be unfortunate if its final disposition should be compelled to await final hearing. The majority dispose of it on grounds lying at the root of the controversy.

Respecting the genuineness and good faith of such ordinances, the Supreme Court, in Caldwell v. North Carolina, supra, 187 U. S. loc. cit. 626, 23 S. Ct. 229, 231, 47 L. Ed. 336, said: "This kind of taxation is usually imposed at the instance and solicitation of domestic dealers, as a means of protecting

them from foreign competition. And in many cases there may be some reason in their desire for such protection. But this shows in a still stronger light the unconstitutionality of the tax. It shows that it not only operates as a restriction upon interstate commerce, but that it is intended to have that effect as one of its principal objects."

See, also, Jewel Tea Co. v. Lee's Summit, Missouri (D. C.) 198 F. 532, 538.

The fact is that the purpose of this ordinance, masquerading in the guise of a revenue measure, and thinly veiled, is to cause appellant to cease selling its product to merchants in Harrisonville in competition with local producers. The development of rapid transit by means of motor-driven vehicles has introduced a new element in trade and commerce, intrastate and interstate. The real question is whether there is to be freedom of trade and barter between citizens of different communities in the same state, as there is between those of different states, or whether such business activities are to be hampered and in effect prohibited by unreasonable and arbitrary exactions under color of legitimate taxation. I think the judgment below should be reversed.